UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JACQUELINE FERNANDEZ, *on behalf of herself and all others similarly situated*,

        Plaintiffs,

-against-

VANILLA CHIP, LLC,

        Defendant.

Case No. 1:24-cv-05639 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

    Jacqueline Fernandez ("Plaintiff") brings this putative class action alleging that she was denied full and equal access to a website operated by Vanilla Chip, LLC ("Defendant") in violation of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 *et seq.*, and state law. *See* Dkt. 1 ("Complaint" or "Compl."). Defendant now moves to dismiss the claims brought against it for lack of standing pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). *See* Dkt. 10 ("Mot."). For the reasons stated below, the motion to dismiss is DENIED.

## BACKGROUND

### I. Factual Background

    The following facts are drawn from Plaintiff's Complaint and accepted as true for purposes of this motion. *See Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc.*, 128 F.4th 112, 120 (2d Cir. 2025). Plaintiff is a visually impaired and legally blind person who uses screen-reading software to read website content. Compl. ¶ 2. Defendant owns, operates, and controls www.truheightvitamins.com (the "Website"), which is an online store that "offer[s] height growth supplements designed to support and promote natural growth in children and

teenagers through a combination of vitamins, minerals, and other essential nutrients." *Id.* ¶ 23; *see id.* ¶¶ 4, 18. "In addition to researching and purchasing Defendant's products and services, consumers may also use Defendant's Website to sign up to receive product updates, product news, and receive special promotions not available elsewhere," *id.* ¶ 19, including "a discount on a first purchase and larger discounts on subscriptions," *id.* ¶ 23.

Plaintiff sought to purchase a tub of "Kids Protein Shake" from the Website, *id.* ¶ 21, because "she was looking for healthy and easy to prepare protein shakes" and "wanted to find supplements that offer a convenient and quick option for ensuring her children receive balanced nutrition," *id.* ¶ 22. Plaintiff attempted to purchase this product from the Website "multiple times, most recently on June 14, 2024," *id.* ¶ 20, but "was unable to complete the purchase due to the inaccessibility of Defendant's Website," *id.* ¶ 24. Specifically, Plaintiff alleges that "[t]he Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen-reading software," including but not limited to "missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse." *Id.* ¶ 44. Plaintiff further alleges that the Website "contained a host of broken links, which is a hyperlink to a non-existent or empty webpage." *Id.* ¶ 45. "For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered." *Id.* If these barriers are remedied, "Plaintiff intends to attempt to access the Website in the future to purchase products and services the Website offers," particularly the "Kids Protein Shake." *Id.* ¶ 29.

Plaintiff alleges that Defendant has violated Title III of the ADA, 42 U.S.C. § 12182 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code

2

§ 8-107(4), by denying Plaintiff and other similarly situated individuals with visual disabilities "access to Defendant's website" and thus "the goods and services that are offered to the general public" on the Website. Compl. ¶ 48; *see also id.* ¶¶ 66-73, 74-86. Plaintiff seeks, among other things, damages, injunctive relief, and declaratory relief. *Id.* at 21-22.

## II.  Procedural History

On July 25, 2024, Plaintiff filed her Complaint, *see* Compl., which Defendant moved to dismiss on October 14, 2024, *see* Mot.; Dkt. 11 ("Br."). On October 29, 2024, Plaintiff filed her memorandum of law in opposition to the motion to dismiss, *see* Dkt. 12 ("Opp."), and on November 4, 2024, Defendant filed its reply memorandum of law in support of its motion, *see* Dkt. 13 ("Reply").

## LEGAL STANDARD

"A district court must dismiss a claim under Rule 12(b)(1) if a plaintiff fails to allege facts sufficient to establish standing under Article III of the Constitution." *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 400 (S.D.N.Y. 2024) (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.à.r.l.*, 790 F.3d 411, 416-17 (2d Cir. 2015)). "'The standard of review for 12(b)(1) motions is "substantively identical" to Rule 12(b)(6) motions,' but with the critical difference that the burden is on the plaintiff asserting subject matter jurisdiction to 'prov[e] by a preponderance of the evidence that [subject matter jurisdiction] exists.'" *Thorne v. Bos. Mkt. Corp.*, 469 F. Supp. 3d 130, 134 (S.D.N.Y. 2020) (alterations in original) (first quoting *Alphas v. City of N.Y. Bus. Integrity Comm'n*, No. 15-cv-03424 (ALC), 2017 WL 1929544, at *2 (S.D.N.Y. May 9, 2017); and then quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first." *Feliz v. IHealth Labs Inc.*, No. 23-cv-00354 (JLR),

3

2024 WL 342701, at *2 (S.D.N.Y. Jan. 30, 2024) (quoting *Davis v. Wild Friends Foods, Inc.*, No. 22-cv-04244 (LJL), 2023 WL 4364465, at *3 (S.D.N.Y. July 5, 2023)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In general, 'a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level.'" *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 367 (S.D.N.Y. 2022) (quoting *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits'" or "weigh[ing] the evidence that might be offered to support it." *Chalas v. Pork King Good*, 673 F. Supp. 3d 339, 342 (S.D.N.Y. 2023) (alterations in original) (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)).

## DISCUSSION

Defendant argues that Plaintiff lacks standing because she has not demonstrated an injury in fact, Br. at 10-15, and that she has not stated a claim under the ADA because the Website is not a place of public accommodation, *id.* at 3-10. The Court addresses each argument in turn and finds that Plaintiff has both established standing and stated a claim.[1]

---

[1] Because "NYCHRL claims involving disability discrimination 'are governed by the same standing requirements as the ADA,'" Plaintiff has also established standing on her state law claim. *Fernandez v. Katie May, LLC*, No. 24-cv-01592 (VEC), 2025 WL 872114, at *1 (S.D.N.Y. Mar. 20, 2025) (quoting *Mendez v. Apple Inc.*, No. 18-cv-07550, 2019 WL 2611168, at *4 (S.D.N.Y. Mar. 28, 2019)).

4

### I. Plaintiff Has Established Standing Under the ADA

"[T]o establish standing [under the ADA], a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (first alteration in original) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)).  In the context of an ADA website case, "a plaintiff has alleged an injury in fact if '(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue;'" and (3) "it [was] reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website." *Feliz*, 2024 WL 342701, at *3 (first quoting *Calcano*, 36 F.4th at 74; and then quoting *Loadholt v. Dungarees, Inc.*, No. 22-cv-04699 (VEC), 2023 WL 2024792, at *2 (S.D.N.Y. Feb. 15, 2023)).

"Following *Calcano*, some courts in this district have required even more detail in complaints submitted by prolific ADA-website plaintiffs." *Sookul*, 754 F. Supp. 3d at 402 (collecting cases).  Accordingly, Defendant contends that the Court should treat Plaintiff's allegations with more skepticism because of the number of similar ADA-website complaints she has filed in this District in recent years.  *See* Br. at 14-16.  "But while '[f]iling serial, formulaic complaints may, in practice, sometimes mean the final product does not contain sufficient non-conclusory allegations to survive a motion to dismiss . . . that fact does not entitle Plaintiff to a weaker presumption that the non-conclusory allegations in the FAC are true.'" *Sookul*, 754 F. Supp. 3d at 402-03 (alteration and omission in original) (quoting *Guerrero v. Ogawa USA Inc.*, No. 22-cv-02583 (LGS), 2023 WL 4187561, at *3 (S.D.N.Y. June 26, 2023)).  Accepting Plaintiff's factual allegations as true, as this Court must, the Court

finds that the Complaint alleges sufficient factual matter to establish standing, even in the wake of *Calcano*.

Defendant does not dispute that the Complaint satisfies the first two ADA standing requirements, and the Court finds that they have been met. As to the first requirement, Plaintiff has established a past injury in fact by alleging that she visited the Website on multiple occasions and was unable to purchase the product she desired due to specifically identified accessibility barriers. Compl. ¶¶ 20, 28, 44-45. As to the second, Plaintiff has plausibly alleged that this discriminatory treatment is reasonably likely to continue because Defendant has failed to remove those barriers, *id.* ¶¶ 48-49, and "lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible," *id.* ¶ 55. *Cf. Sookul*, 754 F. Supp. 3d at 403-04 (first two requirements satisfied where plaintiff allegedly visited defendant's website multiple times to buy product but could not do so due to accessibility barriers that defendant subsequently did not fix); *Davis*, 2023 WL 4364465, at *5-6 (same); *Guerrero*, 2023 WL 4187561, at *2-3 (same); *Weekes v. Outdoor Gear Exch., Inc.*, No. 22-cv-01283 (ER), 2023 WL 2368989, at *3 (S.D.N.Y. Mar. 6, 2023) (same); *Slade v. Life Spectacular, Inc.*, No. 22-cv-00037 (ALC), 2022 WL 17542029, at *3 (S.D.N.Y. Dec. 5, 2022) (same); *Chalas v. Barlean's Organic Oils, LLC*, No. 22-cv-04178 (CM), 2022 WL 17156838, at *2-3 (S.D.N.Y. Nov. 22, 2022) (same).

Defendant largely hangs its hat on the third requirement, arguing that Plaintiff has not plausibly alleged an intent to return to the Website. Br. at 11. The Court disagrees. Here, Plaintiff has "alleged specific, non-conclusory facts from which the Court can reasonably infer that she is likely to return to Defendant's website if it becomes accessible," *Fernandez v. Katie May, LLC*, No. 24-cv-01592 (VEC), 2025 WL 872114, at *2 (S.D.N.Y. Mar. 20, 2025), with sufficient detail regarding "her past visits to [Defendant's] website, the reasoning behind

her desire for [Defendant's product], and an explanation of her need to purchase [that product] from Defendant's website," *Feliz*, 2024 WL 342701, at *4 (collecting cases). In particular, Plaintiff "cites a specific date on which she attempted to access the site and notes that she made 'multiple' other attempts." *Katie May*, 2025 WL 872114, at *2. She further explains that she "wished to purchase [Defendant]'s product because she was looking for healthy and easy to prepare protein shakes" and "wanted to find supplements that offer a convenient and quick option for ensuring her children receive balanced nutrition." Compl. ¶ 22. Moreover, the Complaint alleges that Plaintiff "desired to buy products from the Website" because it is "renowned for offering height growth supplements designed to support and promote natural growth in children and teenagers through a combination of vitamins, minerals, and other essential nutrients" and "offers a discount on a first purchase and larger discounts on subscriptions." *Id.* ¶ 23. The Court finds that these allegations are sufficient to support Plaintiff's claim that she intends to return to the Website to purchase a specific product that she desires, and the Court will not question the sincerity of that desire merely because Plaintiff has brought other similar cases in this District. *See Feliz*, 2024 WL 342701, at *4 (collecting cases where intent-to-return requirement was satisfied based on similar allegations); *Davis*, 2023 WL 4364465, at *6 (same); *see also Sanchez v. NutCo, Inc.*, No. 20-cv-10107 (JPO), 2022 WL 846896, at *3 (S.D.N.Y. Mar. 22, 2022) ("As websites are already easily accessible at any moment, [the plaintiff's] claim that he will return to the website to make a purchase once the issues are remedied is sufficient to satisfy this prong of standing." (quoting *Quezada v. U.S. Wings, Inc.*, No. 20-cv-10707 (ER), 2021 WL 5827437, at *4 (S.D.N.Y. Dec. 7, 2021))).

For these reasons, the Court finds that Plaintiff has satisfied all three requirements to establish standing under the ADA. Accordingly, the Court denies Defendant's motion to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of standing.

## II. Plaintiff Has Stated a Claim Under the ADA

To state a claim under Title III of the ADA, "a plaintiff must allege that '(1) she is disabled within the meaning of the ADA; (2) defendants own, lease, or operate a place of public accommodation; and (3) defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide.'" *Thorne*, 469 F. Supp. 3d at 139 (quoting *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 442 (S.D.N.Y. 2018)). Defendant disputes only the second prong, arguing that the Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) because the Website lacks a nexus to a brick-and-mortar location and is thus not a "place of public accommodation" covered by the ADA. Br. at 3. The Court declines to adopt this position and joins "the vast majority of courts in this circuit [that] have held that commercial websites qualify as places of public accommodation independent of a nexus to a physical space." *Chalas*, 673 F. Supp. 3d at 343 (quoting *Monegro v. I-Blades, Inc.*, No. 21-cv-03093 (GBD) (SN), 2023 WL 2499718, at *3 (S.D.N.Y. Mar. 14, 2023)); *see, e.g.*, *Del-Orden v. Bonobos, Inc.*, No. 17-cv-02744 (PAE), 2017 WL 6547902, at *7 (S.D.N.Y. Dec. 20, 2017) ("A commercial website itself qualifies as a place of 'public accommodation' to which Title III of the ADA affords a right of equal access."); *see also Tavarez*, 623 F. Supp. 3d at 367 n.2 ("The Court notes that at least seven of its colleagues, one of whom has since ascended to the Second Circuit, have found that Title III of the ADA applies to websites.") (collecting cases).

"Neither the U.S. Supreme Court nor the Second Circuit has reached this question, and district courts are split on the issue." *Tavarez*, 623 F. Supp. 3d at 367. "The Circuit Courts of

8

Appeals that *have* decided whether a website is a place of 'public accommodation' have reached differing results." *Romero v. 88 Acres Foods, Inc.*, 580 F. Supp. 3d 9, 18 (S.D.N.Y. 2022).  On one side of the split, the First and Seventh Circuits "have read Title III as extending to remote businesses, including websites." *Sookul*, 754 F. Supp. 3d at 406; *see Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n*, 37 F.3d 12, 19 (1st Cir. 1994) ("[T]he phrase ['public accommodation'] is not limited to actual physical structures."); *Doe v. Mut. of Omaha Ins. Co.*, 179 F.3d 557, 559 (7th Cir. 1999) (Posner, C.J.) ("[Under Title III,] the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do." (citation omitted)).  On the other side, the Third, Sixth, Ninth, and Eleventh Circuits have held that "a place of public accommodation" refers only to "a physical establishment," *Sookul*, 754 F. Supp. 3d at 406, "but that goods and services provided by a public accommodation . . . could conceivably fall within the ADA's protections if they have a sufficient nexus to the public accommodation's physical location," *Martinez v. Gutsy LLC.*, No. 22-cv-00409 (NGG) (RLM), 2022 WL 17303830, at *2 (E.D.N.Y. Nov. 29, 2022); *see Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) ("[W]e do not find the term 'public accommodation' . . . to refer to non-physical access . . . ."); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (en banc) ("[A] public accommodation is a physical place."); *Weyer v. Twentieth Cent. Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000) ("[S]ome connection between the good or service complained of and an actual physical place is required."); *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1277 (11th Cir. 2021) ("[P]ublic accommodations are limited to actual, physical

places."), *vacated on reh'g as moot*, 21 F.4th 775 (11th Cir. 2021) (per curiam).[2]  In 2019, the Supreme Court denied certiorari in a case from the Ninth Circuit that could have resolved this split.  *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019).

Although the Second Circuit has not yet taken a position, it reached a related issue in *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2d Cir. 1999), *amended on denial of reh'g*, 204 F.3d 392 (2d Cir. 2000).  In that case, the Second Circuit "started with the text of Title III, and noted that the statute named an 'insurance office' as a 'public accommodation,' and that the statute bars a 'place of public accommodation' from 'discriminat[ing] against [an individual] on the basis of disability in the full and equal enjoyment of [its] *goods* [and] *services*.'"  *Romero*, 580 F. Supp. 3d at 18-19 (footnote omitted) (alterations in original) (quoting *Pallozzi*, 198 F.3d at 31).  The court reasoned that "[t]he most conspicuous 'goods' and 'services' provided by an 'insurance office' are insurance policies," and "[t]hus, the prohibition imposed on a place of public accommodation from discriminating against a disabled customer in the enjoyment of its goods and services appears to prohibit an insurance office from discriminatorily refusing to offer its policies to disabled persons."  *Pallozzi*, 198 F.3d at 31 (citing *Mut. of Omaha*, 179 F.3d at 559).  In concluding that Title III does not simply address physical access to a place of public accommodation, the Second Circuit cited approvingly to the First and Seventh Circuit's opinions:

> Title III's mandate that the disabled be accorded "full and equal enjoyment of the goods, [and] services . . . of any place of public accommodation," suggests to us that the statute was meant to guarantee them more than mere physical

---

[2] While the *Gil* decision was vacated, prior to that decision, district courts in the Eleventh Circuit interpreted *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279 (11th Cir. 2002), as having endorsed the nexus standard.  *See, e.g.*, *Price v. City of Ocala*, 375 F. Supp. 3d 1264, 1269 (M.D. Fla. 2019); *Haynes v. Kohl's Dep't Stores, Inc.*, 391 F. Supp. 3d 1128, 1134 (S.D. Fla. 2018).

> access. We believe an entity covered by Title III is not only obligated by the statute to provide disabled persons with physical access, but is also prohibited from refusing to sell them its merchandise by reason of discrimination against their disability. . . .
>
> We find no merit in Allstate's contention that, because insurance policies are not used in places of public accommodation, they do not qualify as goods or services "of a place of public accommodation." The term "of" generally does not mean "in," and there is no indication that Congress intended to employ the term in such an unorthodox manner in . . . Title III.

*Pallozzi*, 198 F.3d at 32-33 (alteration and first omission in original) (citations omitted) (quoting 42 U.S.C. § 12182(a)) (first citing *Carparts*, 37 F.3d at 20; and then citing *Mut. of Omaha*, 179 F.3d at 564).

While recognizing that it is not directly on point, many district courts in this Circuit have looked to *Pallozzi* for guidance in holding that "Title III applies to websites that offer goods and services," regardless of whether "the website serves as an adjunct to a brick-and-mortar business." *Romero*, 580 F. Supp. 3d at 19 (collecting cases); *see Del-Orden*, 2017 WL 6547902, at *8 (collecting cases). Some district courts disagree and point out that *Pallozzi* centrally evaluated accessibility to the goods and services provided by an "insurance office," an undisputed physical place of accommodation. *See, e.g.*, *Sookul*, 754 F. Supp. 3d at 407 ("Those cases overread *Pallozzi*. *Pallozzi* is a case about the '"goods" and "services" provided by' a place of public accommodation under Title III. It is not a case about the antecedent question of whether a place of accommodation can be a business without physical premises." (quoting *Pallozzi*, 198 F.3d at 31)); *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173, 180-181 (E.D.N.Y. 2021) ("There was no dispute [in *Pallozzi*] that an 'insurance office' qualifies as [a place of public accommodation] . . . . The physical place, per *Pallozzi*, is a condition precedent; once that condition is satisfied, the goods and services sold by that place

11

of public accommodation are swept within the ADA's remit." (citing *Pallozzi*, 198 F.3d at 32-33)).

The Court agrees with the courts in this Circuit that have found websites that sell goods to the public are places of public accommodation for purposes of Title III. "Because the issue is undecided in this Circuit, the Court turns to the statute." *Tavarez*, 623 F. Supp. 3d at 368. "If the words of a statute are clear, [courts] are to construe the statute according to the plain meaning of its words." *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176, 181 (2d Cir. 2024) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)). "If, however, the terms are ambiguous or unclear, we may consider legislative history and other tools of statutory construction." *Id.* (citing *Greenery Rehab. Grp., Inc. v. Hammon*, 150 F.3d 226, 231 (2d Cir. 1998))); *see Garcia v. Garland*, 64 F.4th 62, 72 (2d Cir. 2023) ("[T]he language in a statute . . . is ambiguous if it is 'reasonably susceptible' to two or more readings." (quoting *In re Med Diversified, Inc.*, 461 F.3d 251, 255 (2d Cir. 2006))). To assess ambiguity, the Court refers to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," and "consider[s] not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Zepeda-Lopez v. Garland*, 38 F.4th 315, 320 (2d Cir. 2022) (quoting *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012)).

Title III provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation." 42 U.S.C. § 12182(a). "The phrase 'public accommodation' is defined in terms of 12 extensive categories" of private entities that affect commerce, *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676 (2001) (citing 42 U.S.C.

§ 12181(7)), "but is silent as to cyberspace," *Del-Orden*, 2017 WL 6547902, at *8 ("That is, of course, because the ADA, enacted in 1990, preceded the popular adoption of the World Wide Web and the advent of cyber commerce."). The entities that "are considered public accommodations" include, in relevant part:

> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment; . . . .

42 U.S.C. § 12181(7).

To be sure, "Title III defines 'public accommodation' to include many different types of entities, some of which are clearly tied to physical locations (such as 'theater[s]' and 'park[s]')." *Katie May*, 2025 WL 872114, at *4 (alterations in original) (quoting 42 U.S.C. § 12181(7)(C), (I)). But the statute also identifies various entities that could plausibly "provide services by way of telephone or other modes of communication," either partially or exclusively, which "indicates that [Congress] 'clearly contemplated that the ADA would apply to service providers that do not require a person to physically enter an actual physical structure.'" *Tavarez*, 623 F. Supp. 3d at 369 (internal quotation marks omitted) (quoting *Romero*, 580 F. Supp. 3d at 18). As the First Circuit reasoned just a few years after the ADA's passage:

> The plain meaning of the terms do not require "public accommodations" to have physical structures for persons to enter. Even if the meaning of "public accommodation" is not plain, it is, at worst, ambiguous. . . . Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services.

*Carparts*, 37 F.3d at 19; *see also Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 395 (E.D.N.Y. 2017) ("The Act could have easily cabined the prohibition on discrimination to

13

the goods, services, etc. of a 'facility' of a 'place of public accommodation,' or used the word 'facility' instead of 'place,' but it did not.").

Along these lines, consumers today can avail themselves of the goods and services of mail-order pharmacies, virtual healthcare practices, internet- and hotline-based legal services, app-based laundry pickup services, and online-only banks, insurance providers, grocery stores, and marketplaces. The Court sees no grounding in the statute's plain text to exclude from Title III's reach these virtual spaces that provide sales of goods to the public just because they lack physical storefronts. "The catchall language of 'other sales or rental establishment[s],' as distinct from 'store[s],' suggests that the statute covers all businesses engaged in the sale and rental of goods" — such as Defendant's website — "regardless of whether they maintain storefronts." *Katie May*, 2025 WL 872114, at *5 (alterations in original) (quoting 42 U.S.C. § 12181(7)(E)) (citing *United States v. Mason*, 692 F.3d 178, 182 (2d Cir. 2012)); *see Mason*, 692 F.3d at 182 ("As a general matter, the use of different words within the same statutory context strongly suggests that different meanings were intended." (quoting *United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999))). Websites are also defined as "a service or business that operates via a particular website." *See Website*, Merriam-Webster, https://www.merriam-webster.com/dictionary/website [https://perma.cc/4RKA-XHFD] ("a group of World Wide Web pages" or "*a service or business that operates via a particular website*" (emphasis added)). As other courts have held, an insurance office is still a "service establishment" even if it conducts all its business by phone or online and consumers never set foot through its doors. *See Carparts*, 37 F.3d at 19 ("It would be irrational to conclude that persons who enter an office to purchase services are protected by the ADA, but persons who purchase the same services over the telephone or by mail are not."); *cf. Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, 572-73 (D. Vt. 2015) ("[I]t would make

little sense if a customer who bought insurance from someone selling policies door to door was not covered but someone buying the same policy in the parent company's office was covered."); *Romero*, 580 F. Supp. 3d at 20 ("Although items in this list could be interpreted to be limited to brick-and-mortar locations, that interpretation would lead to the absurd result that people with disabilities are protected if they shop in-store at Whole Foods, but not if they shop online at Whole Foods.").

While the Second Circuit has not opined directly on this issue, this interpretation of Title III is consistent with *Pallozzi*, which declined to "limit the application of Title III to physical structures." 198 F.3d at 32 (quoting *Carparts*, 37 F.3d at 20). In reaching this conclusion, the Second Circuit flatly rejected the argument that goods and services "not actually used *in* places of public accommodation, . . . do not qualify as goods and services '*of* [a] place of public accommodation,'" *id.* (alteration in original) (quoting 42 U.S.C. § 12182(a)), and cautioned that a contrary reading would mean that "a [sales establishment]'s refusal to sell [goods] to a blind person would fall outside the scope of the statute," simply because those goods are used outside the premises, *id.* at 33 ("We see no basis for reading the statute so narrowly." (citing 42 U.S.C. § 12101(b))). The Second Circuit focused not on the fact that the consumer was being denied goods and services in, or access to, a place of accommodation, but rather that the place of public accommodation was denying someone with a disability the goods "of" that place of public accommodation. The same logic applies here, where Plaintiff alleges Defendant's website has denied her "full and equal access to and enjoyment of the goods, benefits, and services" of Defendant's vitamin company on the basis of her visual impairment. Compl. ¶ 28; *see id.* ¶ 52. Exempting Defendant from the ADA by reading an atextual "physical structure[]" limitation into Title III would thus contravene *Pallozzi* and "severely frustrate Congress's intent that individuals with disabilities fully enjoy

15

the goods, services, privileges and advantages, available indiscriminately to other members of the general public." *Pallozzi*, 198 F.3d at 32 (quoting *Carparts*, 37 F.3d at 20).  In any case, "[i]t goes without saying that, wherever Defendant's employees did the work that went into selling its products, they did so within four walls.  What matters for purposes of Title III is not where those walls were located, but whether Defendant provided disabled customers 'full and equal enjoyment' of its services." *Katie May*, 2025 WL 872114, at *5 (quoting *Pallozzi*, 198 F.3d at 31).

In addition, "the statute's purpose, legislative history, and context . . . strongly support construing the term 'public accommodation' to apply to commercial marketplaces, including on the Internet, whether or not these marketplaces take a conventional physical form." *Del-Orden*, 2017 WL 6547902, at *8-9; *see In re Bernard L. Madoff Inv. Sec. LLC*, 12 F.4th 171, 188 (2d Cir. 2021) ("[E]ven if we found the statute to be ambiguous, the legislative history supports our conclusion.").  The ADA's "stated purpose is to 'provide a clear and comprehensive national mandate' to eliminate discrimination against disabled individuals," *Tavarez*, 623 F. Supp. 3d at 369 (quoting 42 U.S.C. § 12101(b)(1)), and "to invoke the sweep of congressional authority . . . to address the major areas of discrimination faced day-to-day by people with disabilities," 42 U.S.C. § 12101(b)(4).  Specifically, "Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem'" in "many areas of society." *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour*, 532 U.S. at 675).  "[A]fter thoroughly investigating the problem" Congress passed the ADA "to eliminate discrimination against disabled individuals, and to integrate them 'into the economic and social mainstream of American life.'" *Id.* (quoting *PGA Tour*, 532 U.S. at 675).

16

To effectuate this purpose and ensure that the statute would withstand the test of time, "Congress . . . passed the law with an expectation that it would encompass evolving technology." *Tavarez*, 623 F. Supp. 3d at 369 (citing H.R. Rep. No. 101-485, pt. 2, at 108 (1990), *as reprinted in* 1990 U.S.C.C.A.N. 303, 391); *see* 1990 U.S.C.C.A.N. at 391 ("[T]he types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times. This is a period of tremendous change and growth involving technology assistance and the Committee wishes to encourage this process."). And as the Supreme Court has emphasized, "the legislative history indicates" that the "12 extensive categories" of public accommodations "'should be construed liberally' to afford people with disabilities 'equal access' to the wide variety of establishments available to the nondisabled." *PGA Tour*, 532 U.S. at 676-77; *see* 1990 U.S.C.C.A.N. at 383 ("[W]ithin each of these categories, the legislation only lists a few examples and then, in most cases, adds the phrase 'other similar' entities. The Committee intends that the 'other similar' terminology should be construed liberally, consistent with the intent of the legislation that people with disabilities should have equal access to the array of establishments that are available to others who do not currently have disabilities.").

Here, the Court finds that the ADA's sweeping remedial purpose and legislative history require adopting the more expansive interpretation that Title III extends to businesses that sell goods through commercial websites. "Today, few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites," *Del-Orden*, 2017 WL 6547902, at *9 (quoting *PGA Tour*, 532 U.S. at 675), and "[t]he 'broad mandate' of the ADA and its 'comprehensive character' are resilient enough to keep pace with the fact that the virtual reality of the Internet is almost as important now as physical reality alone was when the statute was signed into law," *Andrews*, 268 F. Supp. 3d at 395; *cf. South Dakota v.*

17

*Wayfair*, 138 S. Ct. 2080, 2095 (2018) ("The 'dramatic technological and social changes' of our 'increasingly interconnected economy' mean that buyers are 'closer to most major retailers' than ever before — 'regardless of how close or far the nearest storefront.'" (quoting *Direct Mktg. Ass'n v. Brohl*, 575 U.S. 1, 17, 18 (2015) (Kennedy, J., concurring))). "Although websites are not specifically mentioned in the statute, the law's explicit purpose and the inclusion of providers that do not require physical entry into a location to access their goods and services indicate that websites are within the broad reach Congress intended Title III to have." *Tavarez*, 623 F. Supp. 3d at 369. "Limiting Title III's scope to brick-and-mortar venues . . . would 'render [Title III] effectively impotent' in broad swaths of social and economic life, 'which would be contrary to the broad remedial purpose of the ADA — an act that "has been described as a milestone on the path to a more decent, tolerant, progressive society."'" *Del-Orden*, 2017 WL 6547902, at *9 (alteration in original) (quoting *Mary Jo C. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144 (2d Cir. 2013)); *see also Dominguez v. Banana Republic, LLC*, 613 F. Supp. 3d 759, 772 (S.D.N.Y. 2020) ("'[A]s a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' That is why courts in the Second Circuit have found that it would be absurd to exclude cyberspace from the ADA's mandate." (quoting *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012))), *aff'd sub nom. Calcano*, 36 F.4th 68.

    Accordingly, the Court finds that Title III extends to the Defendant's sales through a website, even if it does not have a physical storefront. The Complaint thus states a claim

under the ADA based on Defendant's alleged denial of Plaintiff's equal access to the goods and services sold on its website.[3]

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss the Complaint. The Clerk of Court is respectfully directed to terminate the motion at Dkt. 10.

Dated: April 18, 2025
       New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

---

[3] Defendant argues that the Court should dismiss Plaintiff's NYCHRL claim for the same reasons it should dismiss Plaintiff's ADA claim. Br. at 10. Because the ADA serves "as a floor below which the City's Human Rights law cannot fall," *Andrews*, 268 F. Supp. 3d at 401 (emphasis omitted) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)), Plaintiff has also stated a claim under the NYCHRL.

19